UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RESTORATION SERVICES, LLC, MIKE'S TRANSPORTATION, LLC, 27W351, LLC, KEITH MARINO, SUSAN MARINO, and F. MICHAEL MALONE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 17 C 1890<br><br>Judge Gary Feinerman |
| Plaintiffs, | | |
| vs. | | |
| R&R BOARDWALK, LLC, R&R PARK PLACE, LLC, RICHARD PIETRANEK, and HECTOR SAM CRUZ, | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Keith Marino, Susan Marino, and F. Michael Malone, together with three companies that they own either separately or together—Restoration Services, LLC, Mike's Transportation, LLC, and 27W351, LLC—brought this diversity suit against Richard Pietranek, Hector Cruz, and two companies that Pietranek owns with non-party Robert Zitella—R&R Boardwalk, LLC, and R&R Park Place, LLC—alleging that Pietranek, with Cruz's help, stole records and other property related to a business deal between the Marinos and Malone, on the one hand, and Pietranek and Zitella, on the other. Doc. 3. Three years earlier, it was Pietranek who, together with Zitella, brought suit against the Marinos, Malone, Mike's Transportation, and Restoration Services over that same business deal, though in the Circuit Court of DuPage County, Illinois. *Zitella v. Mike's Transportation, LLC*, Case 2014 L 507 (Cir. Ct. DuPage Cnty., Ill. filed May 21, 2014) (complaint and amended complaint reproduced at Docs. 19-2 and 15-2, respectively). The Marinos, Malone, Mike's Transportation, and Restoration Services then counterclaimed against Pietranek and Zitella and filed third-party claims against R&R Boardwalk and R&R Park Place

1

in state court, alleging—as they do as plaintiffs against Pietranek here in federal court—that Pietranek and Zitella stole records and other property related to the deal. Docs. 15-9, 15-10.

Defendants move to dismiss or stay this case pending resolution of the state suit, under either the claim-splitting rule or the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Docs. 15, 25. The motion is granted, and the case is stayed under the *Colorado River* doctrine.

## Background

Given the nature of the motion, the only relevant background is the procedural history of the state and the federal cases.

### A. The State Court Lawsuit

In May 2014, Zitella and Pietranek brought the state court suit against Mike's Transportation, Restoration Services, the Marinos, and Malone. Doc. 19-2. The operative state court complaint alleges that in April 2012, the parties entered into an Asset Purchase Agreement under which Pietranek and Zitella purchased from the Marinos and Malone substantially all the assets of Mike's Transportation and Restoration Services. Doc. 15-2 at ¶¶ 9-10. The complaint further alleges that Pietranek, while in a building owned by the Marinos and Malone, saw financial records that were relevant to the transaction but that the Marinos and Malone had improperly failed to disclose. *Id*. at ¶¶ 22-47. According to the complaint, those records show that Pietranek and Zitella paid far more for the assets than they were worth. *Id*. at ¶¶ 21, 42-47. The complaint alleges that the failure to disclose those records constitutes breach of contract and fraud. *Id*. at ¶¶ 48-196.

Shortly after the suit was filed, the state court enjoined the state court defendants from "destroying any financial records of the two business entities [Mike's Transportation and

2

Restoration Services] or having to do with them and preserving them to maintain the status quo." Doc. 15-5. About a week later, the court entered an order directing that the financial records be preserved and held by a non-party document storage company. Docs. 15-7, 15-8.

In November 2014, the state court defendants filed counterclaims alleging that Pietranek and Zitella unlawfully removed certain of the state court defendants' financial records and personal property from the above-referenced building. Doc. 15-9. After the state court dismissed the counterclaims, Doc. 20-1, the Marinos and Restoration Services (but not Mike's Transportation or Malone) amended their counterclaims against Pietranek and Zitella and added third-party claims against R&R Boardwalk and R&R Park Place, which as noted are companies owned by Pietranek and Zitella; the counterclaims and third-party claims sound in conversion, trespass, breach of contract, and identity theft. Doc. 15-10 at pp. 17-26. Like the original counterclaims, the amended counterclaims and third-party claims allege that Pietranek and Zitella—assisted by Cruz, a former employee or contractor of Mike's Transportation and Restoration Services—unlawfully removed documents and other property from the building. *Id*. at pp. 17-20, ¶¶ 3-21. The stolen items are alleged to include:

> A. customer files containing personal information of thousands of the past customers of Restoration Services, including names, social security numbers, dates of birth, employee records and other personal identifying information, including mortgage and property insurance information.
>
> B. personal files and property of Susan Marino and Keith Marino, including their social security numbers, dates of birth, tax records, credit card and bank account and financial information. …
>
> C. sports memorabilia and certifications; six file cabinets; two folding tables; twelve portable room dividers; florescent and flood lights and emergency exit sign batteries; coffee pot; window air conditioning units; three APC units; category five wiring and phone cords; six cell phones; commercial grade storage racks; radiant portable heaters; surge protectors; water moisture monitoring equipment; books and records; printers; computers, disks and drives, and Christmas decorations.

3

*Id*. at p. 20, ¶ 21. As relief, the state counterclaims and third-party claims seek damages, attorney fees and costs, and "such other … relief as [the court] deems proper." *Id*. at p. 25, ¶ 38.

In August 2016, the state court denied the state court defendants' motion to dissolve the document preservation order and ordered that all of the documents be copied. Doc. 15-11. The state court defendants filed a notice of interlocutory appeal of that order. Doc. 15-12. The appeal remains pending before the Appellate Court of Illinois. Doc. 15 at 7.

**B.     This Lawsuit**

This lawsuit was brought in March 2017 by the state court defendants plus 27W351, LLC—a company owned by the Marinos and Malone that, in turn, owns the building from which Pietranek allegedly took the above-referenced records and other property—against Pietranek, R&R Boardwalk, R&R Park Place, and Cruz. The complaint opens by describing the Asset Purchase Agreement at the center of the state court suit, though the complaint here describes it as an agreement between R&R Boardwalk and R&R Park Place to buy "certain assets" from "some" of the federal plaintiffs. Doc. 3 at ¶¶ 1-10, 13.

The complaint then alleges that the federal plaintiffs had business and personal property stored in a locked storage area in the building, describing that property as:

> a.  Customer files containing personal information of thousands of people and companies, the past customers of companies, including names, social security numbers, dates of birth, employee records, credit card numbers of customers, background checks of employees and other personal identifying information, including mortgage and property insurance information.
>
> b.  Income tax returns, payroll records, employee records, and other financial information containing personal identifying information;
>
> c.  Personal files and property of Plaintiffs Susan Marino and Keith Marino, including their social security numbers, dates of birth, tax records, credit card and bank account and financial information;

      d.        Sports memorabilia and certifications, six file cabinets, two folding tables, twelve portable room dividers; florescent and flood lights and emergency exit sign batteries; coffee pot; window air conditioning units; three APC units; category five wiring and phone cords; six cell phones; commercial grade storage racks; radiant portable heaters; surge protectors; water moisture monitoring equipment; books and records, printers, computers, discs and drives, Christmas decorations and many other items.

*Id.* at ¶¶ 15-16. Categories a, c, and d are nearly identical to the property described in Categories A, B, and C in the state court counterclaims and third-party claims. The complaint alleges that in April 2014, Pietranek and Cruz "broke into" the building, "removed and stole" the property, and used the stolen records in the state court lawsuit. *Id.* at ¶¶ 17-18.

The complaint's claims sound in conversion, trespass, and negligence. *Id.* at ¶¶ 19-34. As relief, the complaint seeks damages and an injunction prohibiting the federal defendants from using the stolen property in the state court suit, along with attorney fees and costs and other equitable relief, including return of the property and disgorgement. *Id.* at pp. 5-6.

## Discussion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 818); *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (alteration in original) (quoting *Colorado River*, 424 U.S. at 813, 817). In determining whether to abstain, the court's task is

"not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks and emphases omitted).

The *Colorado River* analysis has two steps. First, the court asks "whether the state and federal court actions are parallel." *Freed*, 756 F.3d at 1018; *see also Caminiti & Iatarola*, 962 F.2d at 700. If the proceedings are not parallel, *Colorado River* abstention must be denied. *See Freed*, 756 F.3d at 1018. If the proceedings are parallel, the court then must weigh ten non-exclusive factors to determine whether abstention is proper. *See ibid*.

I. **The Federal and State Suits Are Parallel.**

"[F]or *Colorado River* purposes … [p]recisely formal symmetry" between the state and federal suits "is unnecessary" to find parallelism. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("Interstate is correct in its assertion that differences exist. However, the requirement is of parallel suits, not identical suits."). Rather, suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (citation omitted). Thus, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citation and internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (same). "Any doubt regarding the parallel nature of

the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (alteration in original, citation omitted). The parallelism test is satisfied here.

First, the parties in the state and federal cases are substantially the same: the federal plaintiffs, save 27W351, are state court defendants, while the federal defendants, save Cruz, are state court plaintiffs and/or counterclaim defendants. The federal plaintiffs protest that there is no parallelism because the parties in the two cases do not completely overlap. Doc. 19 at 4-5. Their premise is correct: 27W351 (a federal plaintiff) and Cruz (a federal defendant) are parties here but not in the state case; Mike's Transportation and Malone (federal plaintiffs) are no longer counter-plaintiffs and third-party plaintiffs in the state case, though they remain defendants; and Zitella (a state plaintiff) is a party in the state case but not here. *Ibid*. But their conclusion—that this lack of complete overlap destroys parallelism—is wrong.

The governing test is not whether the parties are *completely* the same; rather, it is whether the parties are *substantially* the same. *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) ("The addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings."); *AAR Int'l*, 250 F.3d at 518 ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (citation omitted); *Caminiti & Iatarola*, 962 F.2d at 700 (same). The near total overlap here easily qualifies. *See Freed*, 756 F.3d at 1020 (holding that the federal plaintiff's decision to exclude several federal defendants from the state case could not defeat *Colorado River* abstention); *Clark*, 376 F.3d at 686 (noting that the presence of "four additional defendants" in the federal case did not defeat *Colorado River* abstention because "[t]heir inclusion in the federal proceeding [did] not alter the case's central issue," which was "the same one" presented in the state lawsuit); *Knight v. DJK Real Estate*

7

*Grp., LLC*, 2016 WL 427614, at *5 (N.D. Ill. Feb. 4, 2016) (emphasizing that the absence from the federal case of an individual state court defendant did not destroy parallelism).

Moreover, the federal plaintiffs are entirely responsible for the minor degree of non-overlap. It was the Marinos and Malone, making decisions for themselves and their companies, who chose to include 27W351—a company they wholly control, Doc. 3 at ¶ 3—in the federal suit but to not name it as a third-party plaintiff in the state suit. *See* 735 ILCS 5/2-406(a) ("If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct such person to be made a party."); *see also People v. Brockman*, 574 N.E.2d 626, 631 (Ill. 1991) ("Third-party action is favored and trial courts should be liberal in granting such requests."); *Johnson v. Moon*, 121 N.E.2d 774, 777 (Ill. 1954) ("New parties may be brought in when their presence is necessary for a complete determination of the controversy or where they have an interest or title which the judgment may affect."). It was the Marinos and Malone who chose to name Cruz as a defendant in the federal suit but not as a third-party defendant in the state suit, even though their counterclaims and third-party claims actually charge Cruz with allowing Pietranek to steal their property. It was the Marinos and Malone who chose to name Zitella as a counterclaim defendant in the state suit but not as a defendant in the federal suit. And it was the Marinos and Malone who chose to drop Mike's Transportation and Malone as counterclaim and third-party plaintiffs in the state suit but to include them as plaintiffs here.

Those inclusions and exclusions certainly were the Marinos and Malone's prerogative, but a federal plaintiff cannot destroy parallelism via unilateral decisions regarding which parties to include in which suit. *See Freed*, 756 F.3d at 1020 ("[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants.") (alteration in original) (quoting *Clark*, 376 F.3d at 686-87); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691,

695-96 (7th Cir. 1985) (affirming abstention where the alleged lack of parallelism stemmed from the federal plaintiff's choice to sue certain defendants that were not parties in the state case, and emphasizing that, were *Colorado River* abstention predicated on the complete identity of parties in the state and federal cases, the "doctrine could be entirely avoided by the simple expedient of naming additional parties"); *Freed v. Friedman*, 215 F. Supp. 3d 642, 652 (N.D. Ill. 2016) ("[A] finding that the cases are not parallel predicated on [the plaintiff's choices of whom to join] would unjustly reward strategic behavior, because [a potential defendant's] absence from the state proceedings is entirely attributable to [the plaintiff]."); *Knight*, 2016 WL 427614, at *5 ("[A party] by its unilateral choice cannot destroy parallelism.").

Second, the federal claims concern substantially the same factual issues—ascertaining the records and other property that Pietranek, with Cruz's help, took from the building—and the same legal issues—whether Pietranek violated the law by taking those materials—as the state counterclaims and third-party claims. Indeed, as noted, the list of allegedly purloined items in the federal complaint is nearly identical to the list in the state counterclaims and third-party claims. Both suits therefore involve "substantially the same parties … contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (citation omitted); *see also Clark*, 376 F.3d at 686 ("[A]lthough some of the names appearing on the two complaints are different, the parties' interests in the disputes are nearly identical."). Given that the federal plaintiffs, as state counter-plaintiffs and third-party plaintiffs, are vigorously litigating in state court what Pietranek actually took and whether he violated the law by doing so, "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l*, 250 F.3d at 518 (citation and internal quotation marks omitted); *see also Freed*, 756 F.3d at 1020 (concluding that the state and federal suits were parallel in part because

9

"the issues [in both the state and federal lawsuits] will be resolved largely by referencing the same facts and evidence"); *Caminiti & Iatarola*, 962 F.2d at 701 (noting that "[t]he basic issue that must be decided in either court" was the same, notwithstanding a "slight difference in the parties and issues in the federal and state cases"); *Knight*, 2016 WL 427614 at *5 (concluding that the issues being litigated in state and federal court "[arose] from the same transaction and occurrence" and thus were "parallel for *Colorado River* purposes"). The fact that the state suit, but not the federal suit, involves claims brought by Pietranek and Zitella for breach of contract and fraud is of no consequence; what matters here is that the subject matter of the state counterclaims and third-party claims is the same as the subject matter of the federal court claims. *See Freed*, 756 F.3d at 1020 (affirming *Colorado River* abstention where one of the federal lawsuits "turn[ed] on … the precise subject of the *counterclaims* in the state court proceeding") (emphasis added).

The federal plaintiffs contend that their federal claims are not parallel with their state counterclaims and third-party claims because the two cases involve different causes of action and seek different relief. Doc. 19 at 5-6. It is true that the federal suit has causes of action for conversion, trespass, and negligence, and specifically seeks an injunction preventing the federal defendants from using the allegedly stolen materials in the state lawsuit, Doc. 3 at p. 6, while the state counterclaims and third-party claims sound in conversion, trespass, breach of contract, and identity theft, and seek only damages and unspecified other relief, Doc. 15-2 at p. 25. But the *Colorado River* doctrine is not so naïve as to allow a party to strategically manipulate its pleadings to destroy parallelism. *See Freed*, 756 F.3d at 1020 ("The parallel nature of the actions cannot be destroyed by … repackaging the same issue under different causes of action."); *Clark*, 376 F.3d at 687 ("Even though an additional remedy is sought in the federal action, the

liability issues (which are the central legal issues) remain the same in both cases."); *Beal Bank USA v. Swift*, 2017 WL 372325, at *2 (N.D. Ill. Jan. 26, 2017) (concluding that the state and federal actions were parallel even though the state court suit sought "a foreclosure against the property and a deficiency judgment" while the federal suit sought "a contract judgment … on the note") (emphasis omitted). Indeed, the injunctive relief the federal plaintiffs seek in this case—prohibiting the federal defendants from using the materials taken by Pietranek to advance Pietranek and Zitella's affirmative claims in the state case—is completely intertwined with the state case, and it is certain that the federal plaintiffs would ask the state court for the same relief if they prevail there on their counterclaims and third-party claims.

**II.     The *Colorado River* Factors Support Abstention.**

The second step in the *Colorado River* analysis requires examining and balancing these ten non-exclusive factors:

   1) whether the state has assumed jurisdiction over property;

   2) the inconvenience of the federal forum;

   3) the desirability of avoiding piecemeal litigation;

   4) the order in which jurisdiction was obtained by the concurrent forums;

   5) the source of governing law, state or federal;

   6) the adequacy of state-court action to protect the federal plaintiff's rights;

   7) the relative progress of state and federal proceedings;

   8) the presence or absence of concurrent jurisdiction;

   9) the availability of removal; and

   10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. The court addresses each factor in turn. *See Freed*, 756 F.3d at 1022 (noting that *Colorado River* abstention requires adherence to "rigorous standards," which the district court met by "carefully address[ing] each of the ten factors and provid[ing] sufficient explanations for its findings").

    1. *Whether the State has assumed jurisdiction over property*. The federal defendants admit that this factor does not favor abstention. Doc. 15 at 12.

    2. *The inconvenience of the federal forum*. The federal defendants further admit that this factor does not favor abstention. *Ibid*.

    3. *The desirability of avoiding piecemeal litigation*. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (citation omitted). "Dual proceedings could involve … a grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once." *Ibid*. (citation and internal quotation marks omitted). Because the federal suit involves substantially the same parties, facts, and legal issues as the state counterclaims and third-party claims, proceeding simultaneously in both forums would ensure "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti & Iatarola*, 962 F.2d at 701. Simultaneous proceedings also would encourage one or the other side to attempt to delay proceedings in one forum should the other forum appear more favorable. *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). This factor strongly favors abstention.

4. *The order in which jurisdiction was obtained by the concurrent forums.* The state counterclaims initially were filed in November 2014, and this suit was not filed until March 2017, twenty-nine months later. As the federal plaintiffs concede, Doc. 19 at 7, this factor favors abstention. *See Lumen Constr.*, 780 F.2d at 697 (holding that this factor favored abstention where the state case was filed only five months before the federal case).

5. *The source of governing law, state or federal.* The source of the governing law is state law, which favors abstention, as the federal plaintiffs concede. Doc. 19 at 8; *see Day*, 862 F.2d at 660 ("[A] state court's expertise in applying its own law favors a *Colorado River* stay.").

6. *The adequacy of state court action to protect the federal plaintiff's rights.* The federal plaintiffs contend that the state suit is not adequate to protect their rights because 27W351 is not a party to the state case, and because Mike's Transportation and Malone, while plaintiffs here, are no longer counterclaim and third-party plaintiffs in state court. Doc. 19 at 8. As noted, however, the Marinos and Malone are entirely responsible for this state of affairs, and they cannot now use their unilateral choices to defeat abstention. Moreover, the federal plaintiffs (save 27W351) chose in the first instance to file their counterclaims and third-party claims in state court. *See Freed*, 756 F.3d at 1023 (concluding that because the plaintiff "chose the state court forum," the district court was correct to reject his contention that "his claims [would] not be fairly adjudicated in state court"). As a result, this factor also favors abstention.

In any event, where a federal court claim is stayed rather than dismissed outright, the risk that a state court proceeding will not protect the federal plaintiff's rights is lessened, because if the state proceeding proves itself inadequate, the possibility of reviving the federal proceeding remains. Thus, even if the federal plaintiffs' arguments about the state suit's adequacy were persuasive, the risk to their rights would be mitigated because this court, in granting the federal

defendants' motion, will do so by way of a stay rather than outright dismissal. *See Freed*, 756 F.3d at 1023 ("[The plaintiff]'s substantial rights are protected by granting a stay because it allows him the possibility to revive his federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate.").

    7. *The relative progress of state and federal proceedings*. As in *Colorado River* itself, there is an "absence of any proceedings in [this court], other than the filing of the complaint, prior to the motion to [abstain]." 424 U.S. at 820. In state court, by contrast, the parties have filed amended pleadings, the state defendants have twice contested the state court's preservation order, and the state defendants are presently appealing that order. Thus, this factor favors abstention. *See Freed*, 756 F.3d at 1023 (noting that, while "little ha[d] occurred" in federal court "aside from filing the complaints, … the state court case had been in progress for almost two years," encompassing several judicial rulings, discovery, and "numerous appeals"); *Knight*, 2016 WL 427614, at *7 (same); *Bank of Am., N.A. v. Zahran*, 2011 WL 167241, at *5 (N.D. Ill. Jan. 19, 2011) (same).

    8. *The presence or absence of concurrent jurisdiction*. The federal plaintiffs agree that, because their federal claims arise under state law, this factor favors abstention. Doc. 19 at 8.

    9. *The availability of removal*. This factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. Under 28 U.S.C. § 1446(b) and (c), where (as here) there are no federal claims in the state case and federal jurisdiction could possibly be conferred only by 28 U.S.C. § 1332, the state court defendants have one year from the "commencement of the action" to remove a case even if the case was not initially removable. *See Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 n.6 (7th Cir. 2007) (noting that "every circuit to have considered the question … has held

that the one-year bar [in § 1446(c)] is applicable to cases that are not initially removable");  *Dultra v. US Med. Home, Inc.*, 2014 WL 1347107, at *4 (N.D. Ill. Apr. 4, 2014) (same). The state suit was and remains not removable because the state plaintiffs brought no federal claims and, as the state defendants admitted in their state court pleadings, the parties almost certainly were not completely diverse in November 2014 and as even as late as March 2016. Doc. 15-6 at ¶¶ 1-7 (where the state defendants disclaimed knowledge as to whether the state plaintiffs correctly alleged that they were Illinois citizens, while essentially admitting that the state defendants were Illinois citizens); Doc. 15-10 at ¶¶ 1-7 (same); Doc. 19-1 at ¶¶ 1-7 (same). And even if the parties were completely diverse, the forum defendant rule would have precluded removal because, as the state defendants admitted, Doc. 15-10 at ¶¶ 3-7; Doc. 19-1 at ¶¶ 3-7, they were Illinois citizens as late as March 2016. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000) (discussing the forum defendant rule). In any event, the one-year removal deadline has long since passed.

In the complaint they filed in this court in March 2017, the state defendants (now as federal plaintiffs) alleged that they *currently* are Florida citizens and thus diverse from the federal defendants, who are alleged to be Illinois citizens. Doc. 3 at ¶¶ 1-10; Doc. 6. So it is true that abstention would delay or eliminate the federal plaintiffs' "opportunity to litigate in a federal forum—an opportunity to which [they are] entitled under 28 U.S.C. § 1332." *AXA Corporate Solutions*, 347 F.3d at 279. But the ninth factor nevertheless favors abstention because, as shown above, this federal suit is bound up with counterclaims and third-party claims in the now non-

15

removable state case. *See Day*, 862 F.2d at 660 ("[R]elated removable claims should be decided in state court along with the non-removable claims."). Although the analysis could stop there, it bears mention that the federal plaintiffs opted to file counterclaims and third-party claims in state court long before bringing this suit. Had the federal plaintiffs wished to litigate in federal court the dispute regarding the allegedly stolen records and other property, they could have filed first in federal court; having elected not to do so, Plaintiffs cannot now complain of or escape the consequences of their choice.

10. *The vexatious or contrived nature of the federal claims*. There is no need to comment adversely on the federal plaintiffs' motives to conclude that, because their federal court claims are materially identical to their state court counterclaims and third-party claims, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See Interstate Material Corp.*, 847 F.2d at 1289 ("[T]he federal suit could be considered both vexatious and contrived. … [W]e see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). That said, the fact the federal plaintiffs brought their federal suit only after the state trial court denied their request to dissolve the document preservation order, an order they are currently appealing to the state appellate court, strongly suggests that they have behaved vexatiously. *See Freed*, 756 F.3d at 1024 (finding this factor satisfied where the federal plaintiff brought suit in federal court only after he started losing in state court).

In sum, nearly all of the *Colorado River* factors—particularly the third, fourth, fifth, sixth, ninth and tenth factors—favor abstention, providing the "exceptional circumstances" necessary to abstain. The only remaining question is whether this suit should be dismissed or stayed. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004);

16

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending resolution of the state court suit. When the state suit concludes—or when the counterclaims and third-party claims are resolved—any party may move this court to lift the stay and proceed with the federal suit in a manner consistent with the state court's rulings and any applicable preclusion principles. *See also Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of … preclusion.").

## Conclusion

For the foregoing reasons, Defendants' motion to abstain under the *Colorado River* doctrine is granted, and this case is stayed pending resolution of *Zitella v. Mike's Transportation, LLC*, Case 2014 L 507 (Cir. Ct. DuPage Cnty., Ill.). Given this disposition, there is no need to address Defendants' claim-splitting argument.

November 15, 2017

United States District Judge